FILED

2011 Jun-20  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-G-2091-NW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Christopher L. Roberts, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether he has a severe impairment;

(3)    whether his impairment meets or equals one listed by the Secretary;

(4)    whether the claimant can perform his past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

        In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14].   The ALJ found the plaintiff is unable to perform any past relevant work. [R. 16].  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59.  The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony."  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The plaintiff in this case alleges disability from February 28, 2008, and was 49 years old at the date of ALJ Digby's decision.  The ALJ found that the plaintiff suffers from the following severe impairments:  "chronic neck pain, history of 2 surgeries (fusions), and chronic back pain secondary to mild degenerative disk disease . . . ." [R. 11].  The medical evidence in this case shows that on February 6, 2008, he was seen at Central North Alabama Health Services, Inc., for "pain in both legs and back." [R. 152].  He rated his pain at a seven out of 10.  Id.  A February 21, 2008, MRI of the lumbar spine showed:

1.   Mild degenerating lumbar disc disease.

2.   Fluid signal abnormality demonstrated in the interior aspect of L2 of uncertain etiology.  The possibility of micro compression fracture should be considered.

5

3.     L4-L5: Small central posterior protrusion of disc material with compromise of the anterior subarachnoid space and midline aspect of the thecal sac.  Changes produce mild narrowing of the central spinal canal.

[R. 156].  On February 22, 2008, the plaintiff returned to Central North Alabama Health Services for follow-up of the MRI.  Examination showed back strength and range of motion were within normal limits. [R. 151].  Again he rated his pain at seven out of 10. Id.

On March 3, 2008, he was seen by J. Gregory Adderholt, Jr., a neurosurgeon.  On examination, Dr. Adderholt found:

PHYSICAL EXAM: He is a well developed well nourished man in no acute distress.  He is awake, alert and oriented times three.  Cranial nerves II-XII are intact.  Neck is supple and nontender.  There are no carotid bruits. Cardiovascular: Regular rate and rhythm.  Lungs clear.  Abdomen: Benign. Extremities: No cyanosis, clubbing or edema.  Neurological: Motor is 5/5. Reflexes are 2+ and equal.  Sensation is intact to light touch and pin price. There are no pathologic reflexes.  Gait and station are normal.

IMAGING STUDIES: MRI of the lumbar spine shows degenerative changes but no nerve root or cord compression.

IMPRESSION: Low back pain degenerative in origin.

[R. 155].  Dr. Adderholt recommended "conservative measures with a home exercise program and anti-inflammatories.  I am going to set him for some epidural steroid injections." [R. 154].

On March 6, 2008, he went to Eliza Coffee Memorial Hospital for the lumbar epidural injection, which he tolerated well.  [R. 166].  Diagnosis was lumbar radiculopathy.  Id.  However, On March 14, 2008, he returned to the emergency room

with throbbing moderate leg pain. [R. 160].  He was given demerol and phenergan, and

discharged with a diagnosis of "sciatica." [R. 159, 161].

Fifteen months elapsed before the next treatment record, when he was seen

June 9, 2009, by Charles A. Gaputis, D.O., who stated in his record:

> Onset of symptoms is reported as starting 18 month(s) ago.  The patient
> reports the duration as being continuous.  The location is the bilateral
> lumbar region and the bilateral hip.  Patient reports symptoms worsen with
> activities of daily life and squatting.  Intensity is reported as severe.
> Symptoms appear to be worsening.  Previous treatments/studies include
> injections and medication therapy.  Lyrica and epidural injection didn't
> help.
>
> Associated symptoms include hip pain, numbness in lower extremities, and
> radiating pain.  Reports chronic back pain.  Has had surgery on cervical
> spin, ruptured disc and nerve damage.  Says he would like to be referred to
> pain clinic.  Has applied for disability. [G]etting to the point that he can no
> longer work.

[R. 179].

On June 22, 2009, the plaintiff was seen by S. Aggarwal, M.D., a pain

management specialist.   He told Dr. Aggarwal his pain was "5/10 currently and at its

worse [sic] a 7/10.  Aggravating factors include bending, lifting, and standing for

prolonged periods.  Alleviating factors include rest and medications." [R. 184].  Dr.

Aggarwal found that his range of motion was "limited by 25% in all planes." [R. 185].

He diagnosed chronic neck and low back pain due to arthritis and radiculitis, and started

the plaintiff on Lortab 10 four times a day for pain, Soma 350 (a muscle relaxer) twice a

day and Xanax 2mg twice a day for chronic anxiety. [R. 186].

On July 20, 2009, he complained to Dr. Aggarwal of breakthrough pain although the medicines seemed to be helping.  [R. 183].  Dr. Aggarwal placed him on Methadone.  Id.  On August 17, 2009, the plaintiff complained of itching with the Methadone, so the plan was to discontinue that and increase Xanax and Soma to three times a day. [R. 182].

The final medical record is from December 7, 2009.  He told Dr. Aggarwal that he "is getting over the flu but is otherwise doing fine." [R. 187].  Dr. Aggarwal's impression was chronic pain syndome, and that the plaintiff should continue his medications and follow up in three months.  Id.  The plaintiff's hearing before the ALJ was held on January 27, 2010, where he testified to having chronic moderately severe neck, back and leg pain. [R. 34, 35].  He testified that he can sit for no more than 30 minutes at a time and stand for no more than 10 to 15 minutes at a time before he has to move around because of pain. [R. 33].  He estimated his pain to be a seven or eight out of 10 on an average day, and he reclines two to three hours everyday. [R. 35, 37].  The plaintiff testified that because of his pain, he sleeps only about three hours each night. [R. 38].

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's residual functional capacity assessment that the plaintiff can perform a reduced range of light work. [R. 15].

8

The ALJ gave several reasons for rejecting the plaintiff's pain testimony:

> Regarding the claimant's alleged chronic neck pain, history of 2 surgeries (fusions), and chronic back pain secondary to mild degenerative disk disease, the claimant has a prior medical history of undergoing two prior surgeries in the past, which certainly suggests that his symptoms were genuine.  While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgeries were generally successful in relieving the symptoms.

[R. 15].  While the two surgeries may have very well alleviated the plaintiff's neck and arm pain, the plaintiff's main complaints of pain involve his lower back and legs. Moreover, the ALJ conveniently ignored that by June 22, 2009, the plaintiff was complaining to Dr. Aggarwal, his pain management specialist, of "a stabbing, aching pain in his back and neck that is worse with extension and lateral rotation.  He has radicular symptoms and weakness in the upper and lower extremities." [R. 184].  Dr. Aggarwal noted that the plaintiff's two cervical spine surgeries had a "temporary benefit."  Id.

The ALJ also noted that the February 21, 2008, MRI of the plaintiff's lumbar spine "revealed mild degenerative lumbar disk disease but no nerve root or cord compression." [R. 15].  He discounted the plaintiff's pain testimony because Dr. Adderholt on March 3, 2008, "recommended the plaintiff undergo conservative measures with a home exercise program, anti-inflammatories, and an epidural injection, which he under went on March 6, 2008 and tolerated it well without any apparent complications." However, one week after the epidural injection, on March 14, 2008, the plaintiff was back at the emergency room complaining of moderate leg pain. [R. 160].

The ALJ also mentioned what he described as "a significant gap in the claimant's treatment history" from March 14, 2008, to June 9, 2009, when the plaintiff presented to Dr. Gaputis with back pain. [R. 15].  However, as Dr. Gaputis reported:

> Onset of symptoms is reported as starting 18 month(s) [sic] ago.  The patient reports the duration as being continuous.  The location is the bilateral lumbar region and the bilateral hip.  Patent reports symptoms worsen with activities of daily life and squatting.  Intensity is reported as severe.  Symptoms appear to be worsening.  Previous treatments/studies include injections and medication therapy.  Lyrica and epidural injections didn't help.

[R. 179].  Dr. Gaputis prescribed Pamelor, sometimes used to treat chronic pain, and concluded that the plaintiff needed referral to a pain clinic. [R. 180].  On referral from Dr. Gaputis, the plaintiff was treated by Dr. Aggarwal, who prescribed[1] Lortab, Soma and Xanax. [R. 184].  Contrary to the ALJ's conclusion, the medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").  As Judge Allgood observed in Lamb v. Bowen:  "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever

---

[1] On July 20, 2009, Dr. Aggarwal also prescribed Methadone for the plaintiff's pain, although one month later he discontinued this drug because of the plaintiff's side effects. [R. 182-83].

questioned the existence of appellant's pain.  They simply found themselves unable to

cure the pain."  847 F.2d 698 (11th Cir. 1988).

      In attempting to discredit the plaintiff's pain testimony, the ALJ referenced

the plaintiff's activities of daily living:

> While the claimant testified as to having limited activities, at the time he
> completed a Physical Activities Questionnaire, he indicated he was able to
> take care of his personal needs such as bathing, showering, dressing,
> shaving, and doing his hair.  The claimant indicated his youngest daughter,
> who was 8 years old, depended upon him for care and that he was able to
> prepare and cook meals, perform some household chores, and load and
> unload groceries.

[R. 16].  In the questionnaire referred to by the ALJ, the plaintiff merely checked a box

answering "yes" to the question, "Does anyone depend on you for care (spouse, children,

parents, pets, etc.)?" [R. 121].  The plaintiff's response was, "my youngest daughter,"

however, he went on to explain, "I have not work[ed] in 8 weeks."  Id.  Furthermore, he

stated that "standing, walking, bending, is limited" and "my father and mother are

cooking for me."  Id.  He also stated that his father, mother and daughter "help me as

much as they can" with daily activities.  Id.  At the ALJ hearing, the plaintiff testified that

he goes shopping once a month when he receives his food stamps, and that his father and

son accompany him to the store to help him. [R. 44].  He testified that he used to go

hunting and fishing, but he doesn't "even think about [that] no more." [R. 41].  He

indicated his hobby now was "[w]atching football."  Id.   The activities of daily living

recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true.

The ability to perform the limited activities noted by the ALJ does not rule out the

presence of disabling pain.  The ability to watch television, do occasional shopping, or

perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit

it has been recognized that "participation in everyday activities of short duration, such as

housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan,

125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic
> or an amputee.  Similarly, shopping for the necessities of life is not a
> negation of disability and even two sporadic occurrences such as hunting
> might indicate merely that the claimant was partially functional on two
> days.  Disability does not mean that a claimant must vegetate in a dark room
> excluded from all forms of human and social activity.  . . . It is well
> established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability

to engage in gainful employment that is the key, not whether a plaintiff can perform

minor household chores or drive short distances.  In Easter v. Bowen, the court observed

as follows:

> Moreover, an applicant need not be completely bedridden or unable to
> perform any household chores to be considered disabled. See Yawitz v.
> Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to
> perform as required on a daily basis in the "sometimes competitive and
> stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d
> 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138,
> 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are

concerned with substantial capacity, psychological stability, and steady attendance . . . ."

867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

12

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

At the hearing, testimony was taken from a vocational expert:

Q:   Given the claimant's testimony here today, the level of pain that he's in, at moderately severe, and I'll note that the doctor did not give any opinion that he discounted the claimant's testimony, in moderately severe level of pain, would that prevent him from being able to do the past work or any other jobs in the local or national economy?

A:   Yes. Pain that persists at that level of intensity would preclude the capacity to perform either past work or work any other example of unskilled work.

Q:   Okay. Then there are times he had to recline or lie down during the day as well as days – well, let's be a little bit more specific. If he's having to recline four hours or more or, a day or miss five or more days in absenteeism, would that affect his ability to work in the [INAUDIBLE] of work?

A:   Well, five days or more absenteeism, like over a, what period of time, a year?

Q:   Oh, a month at –

A:   A month?

Q:   Yeah. Yeah, excuse me. Thank you.

A:     Yes, if an individual has to miss that amount of work over a month's time, it would preclude the capacity –

Q:     Uh-huh.

A:     – to sustain any example of gainful employment.

[R. 52-53].

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 20 June 2011.


UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

14